UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICOLE CLARKE, on behalf of H.Q., <br><br> Plaintiff, <br><br> -against- <br><br> NEW YORK STATE OFFICE OF PARKS RECREATION & HISTORIC PRESERVATION; OMAN GUTIERREZ, in his individual and official capacities; DIEGO VASQUEZ, in his individual and official capacities; ELVIS EUSEBIO, in his individual and official capacities; LUIS CAMPOS, in his individual and official capacities. <br><br> Defendants. | 22 Civ. 9567 <br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiff NICOLE CLARKE on behalf of H.Q., by her attorneys, Zachary Margulis-Ohnuma, Tess Cohen, and Benjamin Notterman, complaining of the defendants, respectfully alleges as follows based on information and belief:

### PRELIMINARY STATEMENT

1.   This is an action seeking compensatory damages, punitive damages, and attorneys' fees for violations of minor H.Q.'s civil rights brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1983 and 1988, the New York City Human Rights Law, the New York State Civil Rights Law, and New York Common Law. On H.Q.'s first day working as a lifeguard at Roberto Clemente State Park, a supervisor and three other lifeguards drugged,

imprisoned, sexually abused, and tried to rape her. Two different co-workers took their penis out and attempted to rape H.Q. on two separate occasions on the same day. Two other co-workers joined in, and attempted to prevent H.Q. from leaving the locker room during the attempted rape. She was able to escape the two rape attempts at the hands of the state employees only by pushing through the fog of a surreptitiously administered drug, shoving away her assailants, and fleeing. One of the men who falsely imprisoned her and attempted to rape her was her work supervisor. Despite her obvious incapacitation and distress, no one intervened to help. After H.Q. partially reported what occurred by reporting that alcohol had been consumed at the work party, co-workers retaliated against by her on the job. As a result of the terrifying events of her first day at work and the subsequent retaliation, H.Q. continues to suffer from severe emotional trauma, including distress, sleep loss, anxiety, and stress. These symptoms, a direct result of the Defendants' conduct, led her to stop swimming competitively and to struggle in school. She now sues for damages under Federal Civil Rights law, the New York City Human Rights Law, the New York Civil Rights Law and New York Common Law.

## JURISDICTION

2. Plaintiff brings this action for compensatory and punitive damages, affirmative and equitable relief, an award of costs and attorney's fees, and such other and further relief as this Court deems equitable and just.

3. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Civil Rights Act of 1871, 42 U.S.C. § 1983, to redress the deprivation under the color of law of Plaintiff's rights as secured by the United States Constitution.

4. This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

5. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff's claims brought under the laws of the State of New York.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff has exhausted the requisite administrative remedies to bringing this claim as follows:

7. On April 28, 2022, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC assigned the claim number 520-2022-04899.

8. On August 17, 2022, Plaintiff requested that the EEOC issue a Notice of a Right to Sue.

9. On August 22, 2022, EEOC granted Plaintiff's request and issued a Notice of Right to Sue as it was unlikely that the EEOC would be able to complete its investigation within 180 days from the date the charge was filed.

## VENUE

10. Venue is properly laid in the Southern District of New York under 28 U.S.C. § 1391(b), because this is the district in which the claim arose and **H.Q.** currently resides in this district and resided in this district in 2021.

## JURY DEMAND

11. Plaintiff respectfully demands a trial by jury on all issues and claims set forth in this Complaint pursuant to the Seventh Amendment of the United States Constitution and Fed. R. Civ. P. 38(b).

## PARTIES

12. NICOLE CLARKE is a general guardian of H.Q. as she is the natural mother and sole custodial parent of H.Q.

13. H.Q. is a seventeen-year-old minor female, as of the time of this filing. She is a citizen of the United States, and has been at all relevant times a citizen and resident of the State of New York.

14. Defendant **NEW YORK STATE OFFICE OF PARKS RECREATION & HISTORIC PRESERVATION ("NYS PARKS")** was at all times relevant to this Complaint responsible for the management and administration at Roberto Clemente State Park and was the employer of H.Q. and the other defendants named herein.

15. Defendant **OMAN GUTIERREZ** is an adult male. At all times relevant to this Complaint, he was employed by **NYS PARKS**. At the relevant time, **GUTIERREZ** was a senior lifeguard, and a backup supervisor with supervisory authority over H.Q.. He was also in training to become a Chief Lifeguard, which would have made him H.Q.'s direct supervisor. He is sued in his individual and official capacities.

16. Defendant **DIEGO VASQUEZ** is an adult male. At all times relevant to this Complaint, he was employed by **NYS PARKS**. He is sued in his individual and official capacities.

17. Defendant **ELVIS EUSEBIO** is an adult male. At all times relevant to this Complaint, he was employed by **NYS PARKS**. He is sued in his individual and official capacities.

18. Defendant **LUIS CAMPOS** is an adult male. At all times relevant to this Complaint, he was employed by **NYS PARKS**. He is sued in his individual and official capacities.

## FACTS

19. In July of 2021, H.Q. was 16 years old.

20. H.Q. resided, then and now, in Westchester County with her mother, Nicole Clarke.

21. H.Q. is an honors student, attending high school in New York City, and a competitive swimmer.

22. On or about July 12, 2021, H.Q. reported for her first day of work as a lifeguard at the swimming pool located inside of Roberto Clemente State Park ("Clemente Park").

23. That day there were storms, so the pool opened and closed to the public several times.

24. All employees were using the women's locker room for employees due to repairs being made to the men's locker room for employees.

25. On H.Q.'s first day of work, the employees were permitted to throw a birthday party at the pool during their working hours.

26. Co-workers of H.Q. brought in coolers filled with what H.Q. believed to be water, but after drinking the liquid she felt odd, and like her throat was closing up.

27. **VASQUEZ** then gave her a purple liquid, which she believed was grape juice.

28. After drinking the liquid supplied by **VASQUEZ,** H.Q. felt nauseated, and her vision was blurry.

29. H.Q. was so disoriented that she slipped and fell into the pool.

30. When H.Q. got out of the pool, she accidentally urinated on herself. She felt unable to control her bladder.

31. Shortly after H.Q. fell in the pool, she went into the women's locker room, feeling very ill. She couldn't speak and felt weak in the knees.

32. She felt someone lift her from behind. She could not see who it was, but she was able to get away and went to the shower area.

33. The shower curtain opened, and she felt something press against her back. She turned and saw a co-worker, **VASQUEZ**, naked, with a condom on, pressing his erect penis against her.

34. H.Q. felt like she was blacking out but managed to push **VAQUEZ** away and get out of the shower.

35. H.Q. fell down and started to cry, but was able to return to the pool deck.

36. H.Q. attempted to do her job, but continued to feel nauseated, weak, and unable to control her bladder.

37. H.Q. returned to the women's locker room, and upon entering observed **GUTIERREZ, VASQUEZ, EUSEBIO** and **CAMPOS**. The four men taunted her and asked what she was doing.

38. H.Q. entered the shower area and saw a female co-worker who appeared to be drugged and barely conscious. She saw another female co-worker performing oral sex on a male, and a third female co-worker having sex with another male co-worker. H.Q. tried to help the barely conscious woman out of the shower.

39. **GUTIERREZ** approached, and she fell into him as she was trying to help her co-worker.

40. **GUTIERREZ** pressed against H.Q., pulling down his Speedo, showing his penis, and trying to pull her swimsuit down.

41. H.Q. repeatedly pushed him away, and **GUTIERREZ** said to someone who was nearby, "I don't know how she's doing that."

42. **GUTIERREZ, VASQUEZ, EUSEBIO** and **CAMPOS** cornered her, grabbed her, and she fell trying to get away.

43. H.Q. managed to pull away, escape to a storage area and hide there.

44. H.Q. heard one of the four men state, "Why did you let her get away?"

45. Later that same day, H.Q. tried to get to her phone, and a male employee grabbed her and pulled her back into the locker room. She said, "I won't tell." She was again able to pull away. H.Q. is uncertain which male employee grabbed her at that time.

46. There were **NYS Parks** supervisors present at the pool deck that day.

47. H.Q. and other female co-workers were walking and behaving oddly on the pool deck in a way that should have indicated to supervisors that they were intoxicated.

48. The next day H.Q. went to the Park Director of Clemente Park, Frances Rodriguez ("Director Rodriguez"), and reported that she had accidentally ingested alcohol during the work party.

49. She did not report the assaults that occurred at that time.

50. Director Rodriguez said there was a "three strikes rule," so there would be no repercussions for H.Q. drinking, whether accidentally or on purpose, on the job.

51. H.Q. made clear to the Ms. Rodriguez that she was served a drink that she thought was non-alcoholic, but actually contained alcohol.

52. Director Rodriguez chose not to take any remedial steps.

53. In the following days, all the lifeguards were required to take a breathalyzer test to make sure they were not drinking at work.

54. Members of the staff learned of the breathalyzer test before it was administered, so they all knew not to drink that day.

55. H.Q.'s co-workers learned that she had reported the drinking and shunned her during work.

56. Employees, including **GUTIERREZ**, called her "pee pee girl" and "snitch".

57. H.Q. believed she would get in more trouble, and face more retaliation, if she reported the attempted sexual assaults on her.

58. In general, there was a culture of not reporting problems to supervisors, which was encouraged by the supervisors.

59. For example, H.Q. heard one of the supervisors say to someone who was having difficulties with another employee, "Don't tell me. The less they know the better." H.Q. took this to mean that **NYS Parks** supervisors did not want to know about the drinking or related sexual assaults and harassment,

and that there would be negative consequences if she reported any improper behavior on the job.

60. As a result of the assaults and response by her employer, H.Q. began to suffer night terrors, headaches, light sensitivity, and extreme loss of appetite.

61. H.Q.'s mother observed her night terrors and loss of appetite over the next several weeks, with growing concern.

62. On or about August 24, 2021, H.Q. confided in her mother about the attempted sexual assaults by **VASQUEZ** and **GUTIERREZ**, with the assistance of **EUSEBIO** and **CAMPOS** that had occurred at Clemente Park.

63. H.Q.'s mother reported the assaults to Director Rodriguez, as well as to Director Rodriguez' supervisor.

64. H.Q., who was still being retaliated against at work, decided to call out sick each day rather than stay on for any additional time.

65. H.Q.'s last day of work was August 24, 2021.

66. H.Q. reported the conduct to the New York City Police Department and the Bronx District Attorney's Office.

67. H.Q. has undergone therapy at the Bronx District Attorney's Office.

68. To this day, H.Q. continues to suffer significant mental distress due to the attempted sexual assaults and the retaliation against her by fellow employees.

## COUNT I

**Hostile Work Environment in Violation Title VII, 42 U.S.C. § 2000e et seq. — All Defendants**

69. Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

70. The attempted rape of H.Q. by defendants **GUTIERREZ** and **VASQUEZ**, with the assistance of **CAMPOS** and **EUSEBIO**, on two occasions in a single day, as well as the drugging of H.Q. , and the subsequent retaliation against H.Q. created a hostile work environment.

71. Liability for this conduct is imputed to **NYS Parks** as **GUTIERREZ** held a supervisory position over H.Q. when he attempted to rape her and drugged her.

72. In addition, liability is imputed to **NYS Parks** as **NYS Parks** should have known about the sexual harassment H.Q. was experiencing and failed to stop it.

73. Despite hiring minors, **NYS Parks** supervisors allowed a party involving alcohol to take place on the park premises. The supervisors allowed

male employees to freely enter the female employee's locker room. They failed to intervene when H.Q. and others were visibly impaired and emotionally distressed.

74. **NYS Parks** failed to protect H.Q. from retribution after she reported the alcohol at the party, all but ensuring H.Q. would be discouraged from reporting the attempted rapes and retribution she experienced.

## COUNT II

### 42 U.S.C. § 1983 Sexual Discrimination – GUTIERREZ, VASQUEZ, CAMPOS, and EUSEBIO

75. Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

76. **GUTIERREZ**, **VASQUEZ**, **CAMPOS**, and **EUSEBIO**, individually and in concert, deprived H.Q. of her right to be free from a hostile work environment based on sex by attempting to sexually assault her in her place of work.

77. **GUTIERREZ**, **VASQUEZ**, **CAMPOS**, and **EUSEBIO**, individually and in concert deprived H.Q. of her Constitutional right to be free from interference with her person.

## COUNT III

**Gender Discrimination in Violation New York City, N.Y., Code § 8-107 – All Defendants**

78. Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

79. The attempted rape of H.Q. by defendants **GUTIERREZ** and **VASQUEZ**, with the assistance of **CAMPOS** and **EUSEBIO**, on two occasions in a single day, as well as the drugging of H.Q., and the subsequent retaliation against H.Q. constituted unlawful discrimination on the basis of gender under the New York City Human Rights Law.

80. Liability for this conduct is imputed to **NYS Parks** because **GUTIERREZ** exercised managerial or supervisory responsibility over H.Q. when he attempted to rape her and drugged her.

81. In addition, liability is imputed to **NYS Parks** because **NYS Parks** should have known about the sexual harassment and retaliation H.Q. was experiencing and failed to stop it.

## COUNT IV

**Attempted Rape in the First Degree in Violation N.Y. Penal Law §§ 130.35 and 110.00 – GUTIERREZ**

82. Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

83. On or about July 12, 2021, defendants **GUTIERREZ** attempted to engage in sexual intercourse with H.Q. by forcible compulsion.

84. In addition, on or about July 12, 2021, defendant **GUTIERREZ** attempted to engage in sexual intercourse with H.Q. when she was incapable of consent due to being physically helpless.

## COUNT V

**Attempted Rape in the First Degree in Violation N.Y. Penal Law §§ 130.35 and 110.00 – VASQUEZ**

85. Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

86. On or about July 12, 2021, defendant **VASQUEZ** attempted to engage in sexual intercourse with H.Q. by forcible compulsion.

87. In addition, on or about July 12, 2021, defendant **VASQUEZ** attempted to engage in sexual intercourse with H.Q. when she was incapable of consent due to being physically helpless.

## COUNT VI

**Sexual Abuse in the Third Degree in Violation N.Y. Penal Law § 130.55 – GUTIERREZ**

88. Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

89. On or about July 12, 2021, **GUTIERREZ** touched H.Q. with his penis without H.Q.'s consent.

## COUNT VII

**Sexual Abuse in the Third Degree in Violation N.Y. Penal Law § 130.55 – VASQUEZ**

90. Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

91. On or about July 12, 2021, **VASQUEZ** touched H.Q. with his penis without H.Q.'s consent.

## COUNT VIII

**Unlawful Imprisonment in the First Degree in Violation N.Y. Penal Law § 135.10 – GUTIERREZ, VASQUEZ, CAMPOS, and EUSEBIO**

92. Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

93. On or about July 12, 2021, **GUTIERREZ**, **VASQUEZ**, **CAMPOS**, and **EUSEBIO,** restrained H.Q., exposing her to serious physical injury, *i.e.* sexual assault.

## COUNT IX

**Gender Based-Violence in Violation of New York Civil Rights Law § 79-n – GUTIERREZ, VASQUEZ, CAMPOS, and EUSEBIO**

94. Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

95. On or about July 12, 2021, **GUTIERREZ** and **VASQUEZ** intentionally selected Plaintiff for harm on the basis of her gender.

96. On or about July 12, 2021, **CAMPOS** and **EUSEBIO** aided **GUTIERREZ** and **VASQUEZ** in such conduct.

**WHEREFORE**, NICOLE CLARKE on behalf of H.Q., demands judgment in a sum to be determined at trial and is further entitled to punitive damages against the individual defendants in an amount to be determined at trial, plus reasonable attorneys' fees, costs, and disbursements of this action.

Dated:       New York, New York
             November 9, 2022

                        ZMO LAW PLLC


                        BY:_____/s/_____
                        ZACHARY MARGULIS-OHNUMA
                        TESS M. COHEN
                        BENJAMIN NOTTERMAN
                        353 Lexington Ave, Suite 900
                        New York, NY 10016
                        (212) 685-0999

                        *Attorneys for Plaintiff NICOLE CLARKE on behalf of H.Q.*